IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAWRENCE PINO,

        Plaintiff,

vs.                                                 CIVIL NO. 01-934 WJ/LFG-ACE

LUNA COMMUNITY COLLEGE et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR PROTECTIVE ORDER

THIS MATTER is before the Court on Defendant Luna Community College's Motion for Protective Order Prohibiting the Deposition of Frank R. Coppler, Esq. [Doc. 22]. The motion is opposed.

Plaintiff, Dr. Lawrence Pino ("Dr. Pino"), brings an action pursuant to 42 U.S.C. § 1983, alleging that the Defendant Luna Community College and its board members, while acting under color of state law, violated his First and Fourteenth Amendment rights. He also brings common law claims for breach of contract, breach of covenant of good faith and fair dealing, *prima facie* tort, and civil conspiracy.

On January 23, 2002, Dr. Pino, through counsel, served a notice on Defendant to take the deposition of its attorney Frank R. Coppler. The Defendant responded by a motion for protective order seeking to prohibit this deposition. Defendant argues that efforts to depose an opposing party's attorney in the case at bar are prohibited unless specific requirements are met.

Relying on Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986), Defendant states:

> The practice of forcing trial counsel to testify as a witness . . . has long been discouraged, . . . and recognized as disrupting the adversarial nature of our judicial system . . . . Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, it also adds to the already burdensome time and costs of litigation . . . . Finally, the practice of deposing opposing counsel detracts from the quality of client representation.

Id. at 1327 (internal citations omitted). The Shelton court held that a party seeking to depose an opposing trial counsel should be permitted to do so only "where the party seeking to take the deposition has shown that (1) no other means exists to obtain the information than to depose opposing counsel . . . ; (2) the information sought is relevant and non-privileged; and, (3) the information is crucial to the preparation of the case." Id. (internal citations omitted). The Tenth Circuit approved the Shelton criteria and made a more limited holding that the trial court ordinarily has the discretion to prevent a deposition of opposing counsel "when any one or more of the three Shelton criteria . . . are not met." Boughton v. Cotter Corp., 65 F.3d 823, 830 (10th Cir. 1995)(emphasis in original).

The reasons for placing limits when an opponent's advocate can be called as a witness are apparent. First, there is a strong presumption that a party be represented by counsel of choice. Greig v. Macy's Northeast, 1 F. Supp. 2d 397, 404 (D.N.J. 1998)(recognizing rights of civil litigant to retain counsel of choice except where preserving integrity of legal profession requires disqualification); Board of Education of the City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)(because of strong presumption to counsel of choice, courts are reluctant to disqualify counsel). Further, in addition to the concerns outlined in Shelton, mischief can occur when a party seeks to name one's opponent as a witness so as to force him or her out of the case.

2

In New Mexico, the Rules of Professional Conduct govern, in part, counsel's participation in litigation. Rule 16-307 of the Rules of Professional Conduct provides that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness.[1] Thus, if Mr. Coppler becomes a witness in this case, he would be disqualified from serving as trial counsel.

The law does not favor a practice of naming an attorney as a witness. Typically, such a practice should be discouraged for the reasons outlined in Shelton. Because of these concerns and of the significant importance of having a party represented by counsel of choice, this is an area where the Court must direct special attention to both Dr. Pino's request to depose Mr. Coppler and Defendant's motion for protective order.

**Analysis**

The starting point for discovery disputes is Fed. R. Civ. P. 26(b)(1). This rule provides, in general, that discovery is permitted on any non-privileged matter relative to the claim or defense of the party in the pending action. Here, Dr. Pino argues that he only seeks information from Mr. Coppler relating to Dr. Pino's termination from his position as President of the college. Dr. Pino concedes that the purpose of the deposition is:

> [t]o determine what Mr. Coppler's knowledge, information or thoughts were, and how he reached certain conclusions regarding Dr. Pino's contract and his proposed demotion. Only Mr. Coppler can thoroughly discuss his notes, his thoughts, discussions and communications, including in the executive session of the Board meeting in which recommendations about Dr. Pino's job position took place."

(Plaintiff's Response, p. 6).

---

[1] There are two exceptions to this rule: when the lawyer's proposed testimony relates to an uncontested issue or the testimony relates to the nature and value of legal services rendered in the case. Rule 16-307(A)(1 & 2).

Thus, Dr. Pino asserts that Mr. Coppler has relevant, discoverable information, and that the deposition should go forward. The Community College, on the other hand, argues that a deposition of its attorney would infringe on its attorney-client privilege, and that the information Plaintiff seeks is privileged. The Court recognizes and respects the importance of the attorney-client privilege. The privilege is used to encourage frank discussions and to promote candor between client and counsel, and, thus, the privilege promotes public interest in the observance of law and in the administration of justice. Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677 (1981).

For a communication to be protected under the attorney-client privilege, the most critical attribute of the privilege is that the client made the communication in confidence and kept it confidential. *See* In Re Grand Jury Subpoenas v. United States, 144 F.3d 653, 658 (10th Cir.)("The purpose behind the attorney-client privilege is to preserve confidential communications between attorney and client.")(citation omitted)(emphasis added), *cert. denied*, 525 U.S. 966 (1998); In Re Horowitz, 482 F.2d 72 (2d Cir. 1973)(confidential communications vital to assertion of attorney-client privilege). Accordingly, to fall within the privilege, the communication must have been intended as confidential. Burlington Indus. v. Exxon Corp., 65 F.R.D. 26, 37 (D. Md. 1974).

If Mr. Coppler provided analysis and legal advice to the Board and if the participants intended that the communications were confidential and were to be kept confidential, the privilege applies. Secondly, in order for an attorney-client privilege to be applicable, the parties to the communication must bear the relationship of attorney-client. Discovery Proceedings in Federal Court, (3d Ed.) § 28.03.

Defendant Luna Community College is an educational institution which can communicate or receive communications only through human agents, for example, its officers, directors, board

members and employees. Because it is sometimes difficult to determine which communications might be subject to the privilege, the Supreme Court, in Upjohn, refused to adopt a blanket rule concerning the applicability of the attorney-client privilege in a corporate context and emphasized that the privilege must be determined on a case-by-case basis. Upjohn, 449 U.S. at 390-91. The mere fact that an attorney is a party to communication does not mean that all communications are confidential. For example, communications concerning business matters are not insulated from discovery simply because they were communicated to or through an attorney. Barr Marine Products Co. v. Borg-Warner Corp., 84 F.R.D. 631, 634-35 (E. D. Pa. 1979). However, if the primary purpose of the communications is to solicit or render advice on legal matters, the communications come within the scope of the privilege.

Here, it is undisputed that Mr. Coppler rendered advice to the Board on legal issues relating to Dr. Pino's employment, the terms of his contract, and, apparently, on his termination. Dr. Pino discounts this fact and argues that there was no attorney-client relationship because Mr. Coppler was hired for other purposes, that is, "general legal services, primarily for LCC Board Policy revisions and developments for the Fiscal Year 2001-2002," and, therefore, Mr. Coppler was not appropriately retained to perform the services. (Plaintiff's Response, p. 5.) Dr. Pino further asserts that there are no specific Board minutes demonstrating that the Board approved any agreement for Mr. Coppler to represent the Board on personnel issues. This absence of a formal contract, Board minutes or a vote, Dr. Pino intimates, means that Mr. Coppler was not the proper attorney to be giving advice.

The Court rejects this argument. It is of no consequence whether there exists a formal contract, or whether the contract specifically delineates the area where legal services are to be provided. What is of consequence is whether the Board sought and Mr. Coppler provided legal
5

advice in this area. While the lack of a contract, if true, could affect Mr. Coppler's ability to force payments for his services, it has no effect on whether the services were rendered. As indicated, the parties concede that Mr. Coppler gave legal advice to the Board on issues relating to Dr. Pino, his contract and termination.

Based on Dr. Pino's response to the motion for protective order, it appears clear that Dr. Pino specifically wants to delve into matters that appear well within the scope of an attorney-client relationship and privilege. Thus, the Court concludes that a privilege does exist.

Additionally, the non-privileged information sought from Mr. Coppler is readily available from other sources. The attorney-client privilege protects opinion and advice, not facts. Upjohn, 449 U.S. at 395-96. If, for example, Dr. Pino's real interest is solely to obtain factual information concerning his termination from his position as President, as he contends on pages 1 and 2 of his Response, or if Dr. Pino wants to find out if Mr. Coppler had a contract and whether the Board sought his presence or advice, that information is available from all those Board members who participated in the meeting and who decided to terminate the contract. By requiring Dr. Pino to obtain information from other available sources, it would not force Mr. Coppler to withdraw from this case, as otherwise required by Rule 16-307 of New Mexico's Rules of Professional Conduct.

In instances where the attorney is the only source of information that is necessary to allow a party to successfully prosecute or defend a claim, and the information is crucial to the preparation of the case, and no other means exists to obtain the information, the Court can require that a party's attorney of record be deposed. Such is not the case here. Dr. Pino has failed to convince the Court that no other means exist to obtain the information; that the functional equivalent of information is not available from other sources; and that the information necessary for the preparation of Dr. Pino's

6

case cannot be obtained without compelling Defendant to give up its counsel of choice.

The Court concludes that the Shelton and Boughton decisions are controlling, that Dr. Pino failed to make a showing required under those cases, and that to allow the deposition would adversely affect the Defendant's right to have counsel of its choice represent it. Therefore, the Court finds that Defendant has shown good cause for granting its motion for protective order, and the motion is hereby granted.

                                                              _____
                                                              Lorenzo F. Garcia
                                                              United States Magistrate Judge